Good morning. May it please the Court, my name is Jeffrey Feiner. I represent Justin Harter. Your Honors, this is the Postal Service case. There are three threshold issues for the Court, and the first one is whether Mr. Justin Harter, as a Postal Service employee, was covered by Articles 15 and 16 of the Collective Bargaining Agreement. These are the due process articles where an employee must be given the reason for negative information put into their name, not what it says. What does it actually say? Mr. Harter 15? Mr. Feiner Yeah. Mr. Harter There are two. 15 and 16 refer to each other. 15 says they must be given advance notice. 16 refers to Mr. Feiner Stop. Of what? Because you just said they got to be told of something bad put in the file, and I don't think the article comes close to saying that. Mr. Harter I understand. Mr. Feiner He must be given notice if he's terminated for cause. Mr. Harter Terminated for cause. Mr. Feiner And that's where I kind of stubbed my toe right from the very beginning, because there's no real sign here that he was terminated for cause. The paperwork you point to is the paperwork that results from termination, but he was terminated because it was December 26. I mean, that's the gist I get from even the case that you've presented. Mr. Harter I understand. Mr. Feiner So how is that establishing termination for cause? Mr. Harter The United States Postal Authority's Form 50 says he failed probation, and when challenged at the EEO, they came up with three items, that he was late, that he wandered, and that they had to remove him from the vicinity of a female, all of which was never given to my client and contested, and that was the basis under the Form 50 submitted by the Postal Service for his termination for cause as failing probation. Ms. Norton So if I understand the government's briefing, they're no longer arguing that Articles 15 and 16 are inapplicable to your client. They seem to now be arguing that you hadn't exhausted your remedies and that you had to bring a suit against the union for violation of the duty of fair representation. Mr. Harter I understand. Ms. Norton Is that properly before us, that argument? Mr. Harter The Postal Service's argument? It's odd that it was raised in their response brief and had not been raised below. However, they the basis they are now relying on, having abandoned the other arguments, was never developed below, and so the Court is somewhat at a disadvantage. The United States offered to have it returned for further development, but let me tell you, I think you can decide it as is. Here's why. The union agreement from my client as a PSC gave him partial rights, 15 and 16, but they said you do not have grievance rights until you've either worked for 90 days or you've been employed for 120. My client and many people who are dismissed right after Christmas haven't got the 90 days in. No dispute, I don't have a problem with that. He had no grievance rights. But because he had no grievance rights, how would I possibly bring, under Rule 11, a hybrid case? I would say that the union failed to what? The union didn't fail to do anything. He had no grievance rights. He's covered by due process rights, 15, 16, but he's not covered by any grievance rights. Now, this is a rare event that it comes to court, although I think it may happen frequently down below, but... Is there any case that has a similar actual situation like this? I have searched, Your Honor. I have failed. There may be something. This is my burden to bring you the cases. I cannot find a single case where anyone has perceived that with due process rights to your job, notice, opportunity to be heard, but no grievance rights that you have to bring the union in. They would have been dismissed right out of the box. And by the way, it's not my habit to bring in non-essential parties. It's just, it would clutter the courts. I think it would be a terrible policy to insist that people represented by labor agreements, with whom there is no dispute with the union, must somehow hybridize, bring the union in, have them sit there, make their motion to dismiss, and they're out. The union did nothing wrong. But nothing on this issue was briefed for the district court. I'm so sorry? Nothing on this issue was briefed before the district court. I had researched this. I determined it was not necessary for a hybrid case. I expected the argument. It never arrived. I never threw it in the hopper. However, this case need not be returned to the lower court. There is sufficient evidence, first, on the contract, which was thrown out on a 12B6. I raised my hand. I said, Judge, they're throwing in documents not in the pleadings. This is a summary judgment. Postal Service said, no, it's not. Okay, fine. We went for it. I was thrown out on a 12B6, where the pleadings explicitly said my client has due process rights for his termination. He had no opportunity to exercise them through a union. He's bringing this lawsuit because there are sham documents in this record. Just getting back to what was before the district court, the district court referenced the CBA, the collective bargaining agreement. I think the government had provided a site to it, and then the district court held that the collective bargaining agreement was incorporated by reference. Was that an error on the part of the district court, or was that correct? It had to be error on the district court's part. First of all, the citation given to the district court doesn't work. Plug it in. It won't work. It has a typographical error. So the district court did not review it. I could not review it, but I reviewed the ancillary documents, the supplemental documents that the union and the Postal Service produced for its members to understand, including a memorandum of understanding, which is an official document. And if you read the contract, what the government did was, in a Procrustean way, they went through the first page, and then there was a long block quote, and then they cut it off, like with a paper cutter. That document goes on for another 15 articles, all of which refer to PSEs. The district court, with respect, could not have looked at that, because it's clear that Article 15 references PSEs. Article 16 references PSEs. So do many more articles. But the United States, in error, and I may have been a subordinate, I cast no aspersions, but the United States somehow chopped that contract off at Article 7 and said, see, they're not in there. PSEs aren't covered. This case is over on the contract issue. The district court judge agreed. You brought that to the district court's attention, didn't you? I did. I attempted to. I did not make a motion for rehearing. I did not make a motion to re-challenge it. I must admit, Judge, when I had two different versions of a Form 50, when I had the contract cut off, in mid, between Number 7 and Number 8, I was at a loss what to do with this record. Now, this is one of the worst records I've ever dealt with. It is a mess. But I can put it into very short capitalization. My client was removed without notice on spurious accusations, encouraged to reapply, sent home. They said, well, he didn't call. Well, it turns out they never told him to call. They told him to apply again. He applies again. Turned away. And when you look over the field and turn over each stone, they fail. There are four comparators, three of which are in the record. I have a fourth that's in the record, but not in my brief. There are four comparators of non-Native males who were terminated, one for cause, just like my client, the same cohort, rehired within weeks. My client was not. The only explanation was he was late, he didn't return calls, all of which was challenged, and we're at summary judgment. My client's assertions that are properly before the court were not to be cast away, and they were. Well, what evidence could your client provide as to why he was not rehired? Well, he didn't provide any because... So why is the fact that we're at summary judgment and he had a different point of view meaningful? Because he pointed out he had never received any write-ups. He received no negative matters in his personnel file, which regulations require even if the statute does not. And he was not rehired. His termination isn't the problem, Your Honors. Let me be clear. On the 26th, they let him go. They let everybody go on the 26th. All the PSCs are let go. Which I've got to say is why I'm kind of baffled by the breach of contract claim, but that's... We're on number two now, so we'll start with number two. Because when he comes back to be rehired, he did it twice, when he comes back, they now say, oh, when you worked here before, you had bad reviews. News to him. And you were fired for cause. That was the second position, correct. So the first position, they said he didn't return a call, so that may have been an error, but it wasn't based on his form 50. And then for the second position, they said he had a negative in his file. You said there were four different similarly situated non-natives. Yes. Very important. I saw in your brief a reference to Travis Ryan Galleon, who wasn't exactly similarly situated because he was hired as a mail handler assistant and Harder, I believe, didn't apply to be a mail handler assistant. But what other similarly situated non-native employees are you referring to and where are they in your brief? Just touching on Galleon, he had postal history concerns, a lower score, but he was not hired as a PSC. He wouldn't be. He was given a permanent position. So did Harder, based on my notes, Harder himself didn't allege that he applied to be a mail handler assistant. Is that correct? No. He did not apply for that specific job. Okay. And then there was some evidence that Harder and Galleon had both been rejected for the 2015 PSE mail processing clerk position, according to my notes. Yes. Their rejections of the Form 50s were remarkably similar. But keep in mind, the Form 50s provided by the Postal Service are in conflict. So who, what similarly situated, and you're focusing on the discrimination on the basis of race, individuals, and where is that in the record so I can look at that? Very good. First of all, in the record, the United States Postal Service said there were no disqualifying factors for any of their rehires. That's not true. That's at ECR 222, where at the EEO level, the Postal Service said there were no rehires that had problems. Here are the rehires that belie that. Berry, White, failed probation. Same phrase, failed probation due to poor work. That's at ECR 163. Now I gave an incorrect citation in my brief. The correct brief is ECR 177, 178. The plant manager, quote, wanted him back. He was terminated for cause, poor work, failed probation, just like my client, but he is not a native. And the plant manager instructed the plant to have him brought back, ECR 177, 78. Gordon, separated after Harder, a few weeks later, rehired, ECR 163 and 233. And then Brown indicates the race of Mr. Gordon. I'm not positive. Okay. There were two native. You said Berry had indicated his race? I don't believe so. I think what David stated was that there were three Native Americans at the plant, and none of them were this gentleman. But I agree. There is no explicit statement that this gentleman was white. That is correct. And then Brown, that record is at ECR 176 to 177. These are the four comparators on which we relied, especially in view of the fact that the Postal Service said no one who was rehired had disqualifying factors. Judges, they were fired. That's a disqualifying factor. And the overview for this, a narrative form, is found in Justin Harder's affidavit at ECR 186. That matters because we're at summary judgment for that claim. That's not a 12b6. That was Rule 56. And his affidavit went through in that record and cited to the records, cited to the rosters that we obtained. We were able to see on the rosters, oh, my goodness, this man was let go the same week as Mr. Harder, hired back three weeks later with negative stuff in his file. Do you want to save some time for rebuttal? I do. I have a minute and a half. Thank you. Good morning, Your Honors. Rudy Vershoor from the Eastern District of Washington in Spokane on behalf of the Postmaster General. We are asking that this Court affirm the District Court's decision to dismiss the contract claim on a 12b6 motion and to affirm the dismissal of the Title VII claims on a summary judgment motion. And let me start with the breach of contract claim. Procedurally, this is a little unusual. I know the question has already come up as to whether this was before the Court. The main issue we raise now, which is that Mr. Harder was required to allege that the union breached his duty of fair representation. Let me just start with, you don't now argue that the employees, PSEs, don't have rights under Article 15 and 16 and that the truncated document that you submitted to the Court was inaccurate and misleading. Is that correct? Let me just start. We have not abandoned that argument we made. I am unaware that any document was truncated since I was the one that put the motion together. I don't know what that discussion is all about. So you submitted a full section that showed the applicability of Articles 15 and 16 because I thought your representation to the District Court was that only two pages was applicable and those showed that only a certain number of articles applied to PSEs. That is what we submitted because, and that was the complete section that discussed which articles applied to PSEs. So you continue to take the position that Articles 15 and 16 are not applicable to a PSE? Is that correct? That seems contrary to the language of the CBA. Article 15 is not applicable to this PSE who worked less than 90 days and the article is explicit. But there is nothing in the article that says you have to work more than 90 days to get notice of charges against you, right? We believe there is. Let me find the page. It says, in the case of removal for cause within the term of an appointment, a PSE shall be entitled to advance written notice of the charges against him or her in accordance with the provisions of Article 16 of the National Agreement. I think it's the language that's cited by opposing counsel. And if you're looking at page 290 of the Memorandum of Understanding, that paragraph needs to be taken in context with the paragraphs below and above it, which actually specifically state that you don't have grievance rights related to your removal. And that's where – That isn't – the sentence doesn't give grievance rights. It talks about removal for cause that he's entitled to advance written notice. That doesn't reference grievance rights, does it? No, because the quote you're looking at, which I believe is out of Plaintiff's Brief, doesn't contain the entire section of that Article 15, where it's – provisions be Article 15. But the Article – Three. Is – the notice provision is in the same section as the grievance provision. If you don't have the ability to grieve, then our position was you are done. You can't grieve the failure to provide notice. How does that vitiate the language that says you're entitled to notice? You may not be able to grieve what – your termination, but it explicitly says it applies to PSEs. You're entitled to notice. I guess I'm not sure I follow what I'm supposed to look at to decide that the reference that Judge Ikuti just read doesn't apply to this Plaintiff. Our position is that the Article 15, because you do not have – this PSE did not have the ability to grieve, he can't grieve the lack of notice. So even if there was no notice – So that means he's not entitled to notice? That's our position. He can't – he couldn't grieve it. He's entitled to notice. Yeah, but he could bring it to court. He's brought it to court. Well, he hasn't brought it to court properly, and that's the position we took in our response brief. Well, but if he's not entitled to grieve, then how could it possibly make any sense to say he's required to sue the union? I got to say, I was mystified as to – I mean, there's a Rule 11 violation staring a Plaintiff's counsel in the face to sue the union if you know that you can't assert that you have any rights against the union. There is not – we don't believe there's a Rule 11 violation here. There is a string of cases that require, even when the Plaintiff believes that the grievance rights don't belong – don't belong to him, don't apply to him, that he has to exhaust that remedy and at least try, and I can – So, but counsel, so even if one assumed for the sake of argument that you're correct, why shouldn't we send this back to the District Court to – if that is before the District Court and the District Court says that, why shouldn't Plaintiff be given the choice as to whether or not he'd want to amend to bring in the union? Well, the biggest reason is because the statute of limitations on amending the complaint has teaches that there's a six-month statute of limitations that applies in this very case. That six months has long passed. The Plaintiff actually did amend his complaint eight and one-half months after the original complaint, but there was no mention of a breach of the DFR by the union. But I guess if he doesn't have to raise a DFR complaint in his complaint or a DFR claim in his complaint or in the District Court, so he decides and there wouldn't be any statute of limitations issue. I guess I don't – I don't think the government raised this argument about the duty of fair representation before the District Court did it. We did not. So, it remains an open issue or an open question as to whether that's actually required, and the District Court can make that determination. If it's not required, then of course there's no statute of limitations issue. So, we believe the Supreme Court has spoken on this. Hines v. Anchor Motor Freight, 424 U.S. 554, really talks about using the procedure that's in the collective bargaining agreement. Republic Steel v. Maddox, the Supreme Court, 379 U.S. 650, again talks about that. You just represented to us that there is no grievance right within the document for somebody in Mr. Harder's position. Isn't that correct? That is. So, you're saying that it's nevertheless necessary to raise a grievance argument that the United States has represented does not exist? Yes. All right. This Court has spoken on the Vaca v. Sipes, 386 U.S. 171, where it said the plaintiff must at least attempt to exhaust exclusive agreements and arbitration procedures, even if he doesn't believe that they exist. He has to do that. And the problem is the statute. I've got to tell you, this position seems so radical to me, I hadn't bothered to check the propositions. And I will check these cases. But I've got to also tell you, if these cases don't support the proposition you're arguing for, we're not going to appreciate it. Well. It's because it makes no sense to me to say, if your position is he has no rights, it isn't — I can understand a distinction that says the fact that he may not think he has a grievance right isn't determinative, but that's not a question of whether he thinks something that might be wrong. You're asserting, and it seems perfectly consistent with everything I've looked at, that he has no rights against the union. And so imposing a requirement that he sue the union as the price of admission to being able to sue the government is utterly illogical to me. And if you can tell me the logic behind it, I'll listen. But otherwise, I'm going to go back and see if the cases really say you've got to do the  I'm skeptical. Thank you. The — at the time the plaintiff made his complaint, if it was his belief that the grievance may apply or may not apply, he was required to allege — Even if it's absolutely true that he had no rights against the union, which is your representation, not his, so it's not a question of him being wrong, maybe. His belief may not be an offense if he's wrong, but if he has no rights against the union, what possible logic could there be in making him sue the union? But that wasn't our position when the case started. That was our position when we finally bought the motion. This position wasn't brought up by you until you got to us, so no question it wasn't your position earlier. All right. Let me give you one more citation, Labortier, 778, Fed 2nd, 883, pages 884 to 885, which talks about the plaintiff's belief he is still required to try to exhaust that remedy by — Do you have any case that doesn't turn on the plaintiff's belief but, in fact, a legal conclusion that there are no rights against the union, that still requires a lawsuit against the union? That's what I'm looking for. I can't say specifically if that's — Okay. — if I have that. Isn't that what we have here? It is possible that's what we have here. Wasn't it your representation that there are no grievance rights? Yes. Is there any other rights he could have against the union? Are there other rights? Are there any other rights he could have against the union he could sue on here? Yes, there are. He could sue, like, if he didn't get his overtime or if he didn't receive his pay. Oh, but, I mean, on these facts, on the allegations he's stating here, this claim of termination for cause without notice, does he have any claim against the union? I don't know. I think that would have to work its way through the process. But he didn't bring that process. And the problem is, you can remand it, but the statute of limitations has run so long ago that it's a futile act to bring that. Well, it would be a — I'm sorry. Go ahead. It would be a futile act, potentially, if there was no equitable reason to disregard the statute or if we found — it wouldn't be a futile act if we found that it wasn't necessary to — or the district court found that. But, I mean, with all these new issues, it's just hard for me to understand why, given that the district court made this decision, obviously without having read the entirety of Article 15, why we shouldn't leave these issues to the district court. Sure. I could just point to two more cases, which we did not raise in our briefing at all. We discovered these after we did the briefing, that in a situation where an employee hasn't worked in 90 days and so does not have grievance rights under a collective bargaining agreement, the district court lacks jurisdiction to even entertain a breach of contract claim. I'll give you those citations. Young v. Anthony's, Fish Grotto, 830 Fed Second. If they're not in your briefing, then you need to serve them on the court and the other party. We can do that. All right. Let me just move on to the — because I only have a few minutes left. The Title VII claims, race and gender discrimination. As we pointed out, the summary judgment we brought challenged, among other things, the first thing we challenged was the prima facie case of discrimination. And we showed definitively that plaintiff had not proven a prima facie case, either through direct evidence or indirect evidence. When you look at the plaintiff's response to the summary judgment motion, it does not similarly situated employees. But at that point, that was not developed by the plaintiff in the proper method. They had a jumble of employees they threw together and said, well, see, I worked with these guys and now they have permanent jobs and I don't. But the district court pointed out that plaintiff did not respond to the prima facie case argument. And when that happens under the McDonnell Douglas framework, the burden never shifts back to the defendant to show a legitimate cause for the personnel action. Now, we went ahead and showed the legitimate cause. The firing in 2014 was based on performance. Mr. Chastain just didn't think — the supervisor didn't think he was a good employee and let him go along with, I think, that particular day, eight other employees. When Mr. Harder applied in 2015 for the first position, it appears — and this is the best we could find — that his application got lost. He didn't get a call or a request for an interview. And so that just fell through the cracks. There's no discriminatory intent there. The second job, position two, as described in Plaintiff's Complaint, the interviewer learned from Mr. Harder that he had worked for Postal in 2014, went back and talked to the supervisor, and the supervisor said, yeah, we had problems with him. We don't want to hire people back that aren't the best we can get. And so they didn't hire him. Ultimately, what you're going to find is, besides not responding to the prima facie case, is there was never any evidence of discriminatory intent provided by the plaintiff. They went off on this Form 50, saying there's a fraudulent or a sham Form 50. There are two versions. One was kept at the local office, but neither of those shows any discriminatory intent. You have to, at least to get into a prima facie case, have to show some discriminatory intent. And there was none shown. Well, Bowes and Counsel says that to make the prima facie case, they have to show similarly situated non-Native employees were rehired, even though they had bad information in their file. And he says he's pointed to four who were similarly situated. Yes. And three of those, the brown one, I don't recall the specifics of the person named Brown, but the persons named Barry, Gordon, and Galean are discussed on page 49 of our brief. They are not similarly situated. They had different jobs, which means they had different supervisors, which means some of them were not fired for cause like he was. So you can't compare those. You can't just pull names out and say, well, these people had some problems, and now they were hired. And so they were similarly situated. The other problem that happened in the district court is, and this was in our argument on the prima facie cases, the plaintiff never came forward with evidence of the race of any similarly situated employee. It just wasn't in the record below. And with regard to gender, you'll see, we described in there, of the two vacancies they ran to fill these approximately 40 positions, there were more males hired than females. I'm not sure how you get a discrimination case based on gender when there were more males hired and Mr. Harder was a male. Thank you, Your Honors. Okay. I thank you for your argument, and there's time for rebuttal. Judge Acuda, you asked me a question I wasn't able to answer previously regarding position one. It matters to us because for damages, it is the earlier position in time that he was denied. And this is the crux of our claim. Not that he was fired after Christmas, but he was never rehired and for reasons we think were improper. Here's what happened at the summary judgment. My client said, I never got a call. I called three times. They never called back. In the record, the Postal Service admits at ECR 196 in paragraphs 30 and 32, they finally admit they never called him for the appointment. So he, at summary judgment, he gets his version. He says he called. But that still doesn't explain why. It doesn't point to any discrimination. No, but for damages, I thought there was a question that they had a reason for him not coming to position one. The reason was spurious. Now, here's the discrimination part. We have a prima facie case. The EEO said so. The judge said we didn't have prima facie. I'll represent under the case we cited. We easily made a prima facie case. He's a member of a minority group. A majority member. Your representation, as compared to the district court, I'm not sure why I'm supposed to take your word for it. What evidence was there of similarly situated individuals treated differently? Well, it's not my word for it. That seems to be the issue that's been joined. I understand. Judge, this was the EEO's word. They said it was a prima facie case. I'm quoting the EEO. And you don't have to take their word for it. But the judge was wrong because we have the four comparators. And I just heard counsel say that none of them were similarly situated. They weren't behavior issues. Mr. Berry was fired, failed probation, the same phrase, poor work, same phrase. They said he also, the government said they were hired for different jobs. They were hired for different jobs. But the key point is my client was disqualified from applying. He wasn't allowed any jobs. The white guy, forgive me, was hired into a senior position. And that's discriminatory behavior. My guy couldn't even get the entry level position. They started at the same level. They were all PSEs. Thank you. Okay. We thank both sides for their argument. The case of Justin Harder versus Megan Brennan is submitted.
judges: Clifton, Ikuta, Bennett